**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Melina Angelica Beas-Campo,<br><br>    Plaintiff,<br><br>v.<br><br>Hilary L Case, et al.,<br><br>    Defendants. | No. CV-23-00199-TUC-JCH<br><br>**ORDER** |

Before the Court is *pro se* Plaintiff's First Amended Complaint ("FAC"). Doc. 10. Plaintiff was previously granted leave to proceed *in forma pauperis* and her Complaint was screened and dismissed without prejudice under 28 U.S.C. §1915(e)(2). Doc. 8. With leave of Court, Plaintiff filed her FAC on June 1, 2023. *See* Docs. 8, 10. The Court screens the FAC under 28 U.S.C. §1915(e)(2). For the reasons set forth below, the Court will dismiss the FAC and give Plaintiff one final opportunity to amend her complaint.

**I.     Background**

The FAC names the following defendants: (1) Arizona Department of Child Safety ("DCS"); (2) DCS employee Hilary L. Case; (3) DCS employee David Croxton; (4) Beth Brungardt; and (5) Ombudsman. Doc 10 at 1. Although difficult to decipher, the FAC alleges that employees from DCS used false allegations to justify the removal of Plaintiff's five minor children. *See* FAC. Plaintiff seeks $15,600,000.00 in compensatory damages, general damages, and costs. *Id.* at 6. She also seeks the return of her child A.C. who was placed for adoption in February 2022. *Id.*

The FAC alleges the following: on or about January 10, 2019, DCS removed Plaintiff's minor children—A.C., M.V., L.V., M.V., and G.V.[1]—from their respective schools and childcare under a court authorized removal order. FAC at 2. The removal order was issued based on allegations reported to DCS by A.C.'s teacher "Beth," who the Court understands is Defendant Beth Brungardt, a special needs teacher at Keeling Elementary. *Id.* at 3.

According to Plaintiff, A.C. is "disabled[,]" and suffers from behavioral issues and "emotional delay[.]" FAC at 3. In 2015, DCS removed A.C. from Plaintiff's care citing neglect. *Id.* at 4. After a contested "rule 59 hearing, [DCS] returned A.C. to Plaintiff's care [on] August 27, 2018." *Id.* Plaintiff alleges that in the interim she was involved in a dependency proceeding spanning years where DCS employees pushed for parental severance and adoption over the state court's desire for family reunification. *Id.* Most recently, Defendant David Croxton, a DCS Supervisor, and Defendant Hilary Case, a DCS Case manager, were the DCS employees tasked with handling Plaintiff's case following the 2019 removal. *Id.* at 2–3. It's unclear whether Defendants Croxton and Case were involved in the dependency proceedings between 2015 and 2018.

At some unspecified time, Plaintiff alleges that A.C. was placed in Ms. Brungardt's classroom, and that during this time Ms. Brungardt "[maintained] a very strong hatred toward Plaintiff." On February 21, 2018, nearly a year before the removal, Ms. Brungardt allegedly told A.C. "I think your mom should be in jail for how she treated you[.]" *Id.* This statement upset A.C. and he allegedly attacked Ms. Brungardt, resulting in a report emailed to all parties on the same date. *Id.* Plaintiff alleges Defendants Brungardt and Case "plotted" to assert "false allegations" and "prevent [Plaintiff's] Dependency to close." *Id.* at 4.

On January 10, 2019, two weeks before a hearing date in Plaintiff's dependency action, Defendant Brungardt reported Plaintiff to Defendant Case. *Id.* Defendant Brungardt's allegations were related to Plaintiff's physical abuse, neglect, domestic violence, and failure to protect A.C. *Id.* Plaintiff alleges that Defendant Case failed to notify

---

[1] It appears Plaintiff has two children with the initials M.V., the younger being born in July 2018. FAC at 4.

- 2 -

the Court (which the Court understands as the juvenile court presiding over the dependency) prior to the children's removal, obtained a removal order from Maricopa County who allegedly did not have jurisdiction over Plaintiff, and "went out of her way to make the removal possible." *Id.* Plaintiff further alleges that DCS's subsequent investigations, following the children's removal, were flawed. *Id.* Specifically, DCS did not record interviews with the children, failed to inspect Plaintiff's home, and did not subject the children to any medical evaluation. FAC at 4.

According to Plaintiff, Defendant Case has a history of making false allegations against her. For example, Defendant Case reported Plaintiff for methamphetamine use, an allegation that was allegedly determined as unsubstantiated according to an email from Defendant Croxton dated October 25, 2017. FAC at 5. In November 2018, Defendant Case also reported that Plaintiff was in a romantic relationship with the children's father, Gerardo. *Id.* Under the DCS case plan, Plaintiff and Gerardo were to "only engage regarding the children." *Id.* This prompted a DCS investigation at Plaintiff's home where Plaintiff alleges that DCS found no signs of the father living in the home. *Id.*

Plaintiff also alleges that Defendant Croxton, was indifferent or nonresponsive to her complaints related to Defendant Case. Defendant Croxton "failed Plaintiff by not taking [Plaintiff's] e-mails, phone calls, meetings, mediations, in[-]person complaints [or] grievances regarding [Defendant Case's] behavior towards Plaintiff seriously." FAC at 3. Defendant Croxton provided grievance forms for Ombudsman, an independent agency of the Arizona Legislature that serves as an impartial dispute facilitator for complaints against state agencies.[2] Plaintiff alleges that "no action or remedy came forward" from Ombudsman. *Id.* Plaintiff further alleges Defendant Croxton failed to investigate Plaintiff's grievances including the false accusations made by Defendant Case, failed to investigate the close relationship between Defendant Case and Defendant Brungardt, and failed to remove Defendant Case as Plaintiff's case manager. *Id.*

It also appears that Plaintiff reported to DCS several events concerning A.C. that

---

[2] *See* https://www.azoca.gov/about/ (last visited June 15, 2023).

went unaddressed by DCS employees, including: an incident in October 2018 where Defendant Brungardt allegedly handcuffed A.C., a June 2019 incident where A.C. allegedly exhibited signs of physical abuse while in foster care, and an April 2021 incident where Defendant Brungardt reported that A.C. experienced abuse in his group home, corroborating Plaintiff's earlier suspicions.

The juvenile court held a "Rule 59 hearing" on February 28, 2020. *Id.* at 5. It appears the juvenile court ordered 9-month-old M.V. returned to Plaintiff. FAC at 5. Plaintiff alleges that the four other children remained in DCS care for nearly two years. *Id.* On or about December 20, 2022, A.C. was placed for adoption. FAC at 5.

II. **Analysis**

    **A. The FAC Fails to Comply with the Court's Instructions**

In its screening order, the Court warned, "…if [Plaintiff] elects to file an amended complaint that fails to comply with the Court's instructions explained in this order, the action will be dismissed pursuant to section 28 U.S.C. § 1915(e) and/or Rule 41(b) of the Federal Rules of Civil Procedure." The Court also explained:

> Furthermore, allegations must be set forth in numbered paragraphs. *See* Fed. R. Civ. P. 10(b). Each claim must be stated in a separate count. *See Bautista v. Los Angeles Cnty.*, 216 F.3d 837, 840–41 (9th Cir. 2000). Separate counts are necessary to help the defendant to respond or to help the court and the other parties to understand the claims. *Id.* at 840 (internal citations omitted). Courts require separate counts where multiple claims are asserted or where separate statements will require a clear presentation. *Id.* at 840-41.

Doc. 8 at 5.

Here, the FAC does not set forth allegations in numbered paragraphs. *See* Doc. 10. Moreover, the FAC makes a general reference to "§§ First Amendment; Fourth Amendment; Fifth Amendment; Sixth Amendment; Seventh Amendment; Eight Amendment; Ninth Amendment; Thirteenth Amendment; Fourteenth Amendment[]" without any indication as to which facts correspond to the defendant or defendants' conduct that harmed her and the specific legal right the plaintiff believes the defendant(s) violated.

It is also unclear which theory or theories Plaintiff is attempting to proceed under or whether Plaintiff is asserting a single claim or multiple claims against any individual or entity defendant.

**B. The FAC Fails to Comply with Rule 8**

Under Rule 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974). While factual allegations are accepted as true, legal conclusions are not. *Id.*; *see also Twombly*, 550 U.S. at 556–557. The rules require that "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). Without a clearer explanation of the factual basis for her complaint, and more notice to defendant(s) of the specific legal theories under which Plaintiff is asserting a cause of action, Plaintiff cannot state a plausible claim for relief.

The Court finds the allegations in the FAC remain vague and conclusory and that it is unable to determine whether the current action is frivolous or fails to state a claim for relief. Although the Federal Rules adopt a flexible pleading policy, a complaint must give fair notice and state the elements of the claim plainly and succinctly. *Jones v. Community Redev. Agency*, 733 F.2d 646, 649 (9th Cir.1984). Plaintiff must allege, with at least some degree of particularity, overt acts that defendants engaged in that support plaintiff's claim. *Id.* As an example, Plaintiff alleges that Defendant Case made false allegations in 2017 and 2018. It's unclear whether these allegations were presented to the juvenile court as evidence, under a judicial deception theory, or whether these allegations were used as justification for any particular action taken by DCS in the dependency proceeding.

Because plaintiff has failed to comply with the requirements of Fed. R. Civ. P. 8(a)(2), the FAC must be dismissed.

### C. The FAC Alleges Impermissible Child Custody Claims

The FAC requests, among other things, that this Court "[a]ssist Plaintiff in the return of her child A.C." Doc. 10 at 6. Insofar as Plaintiff is attempting to raise claims regarding child custody or errors made by the state court, the Court is without jurisdiction over such claims because they are exclusively matters of state law. *See Ankenbrandt v. Richards*, 504 U.S. 689, 702–04 (1992) (holding that the domestic relations exception to federal subject matter jurisdiction "divests the federal courts of power to issue divorce, alimony and child custody decrees."); *see also Peterson v. Babbitt*, 708 F.2d 465, 466 (9th Cir.1983). Under the *Rooker-Feldman* doctrine, "a federal district court does not have subject matter jurisdiction to hear a direct appeal from the final judgment of a state court." *Noel v. Hall*, 341 F.3d 1148, 1154 (9th Cir. 2003). Claims are barred under the doctrine "when the federal plaintiff both asserts as her injury legal error or errors by the state court and seeks as her remedy relief from the state court judgment." *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1140 (9th Cir. 2004) (emphasis in original).

Moreover, claims against social workers related to the removal of her child from her custody, which seemingly arise from state court orders, would be barred by the *Rooker-Feldman* doctrine. *Johnson v. Child Protective Servs.*, No. 2:16-cv-763-GEB-EFB PS, 2017 WL 4387309, at *2 (E.D. Cal. Oct. 3, 2017) (finding that constitutional claims relating to plaintiffs' children being removed from their custody and placed in foster care, which were the subject of a state court action, barred by the *Rooker-Feldman* doctrine). To the extent Plaintiff seeks relief from any state court judgment or order, such claims are barred.

### D. The FAC Does Not Allege Cognizable Family Association Claims

It appears that Plaintiff is attempting to allege a denial of familial association. Parents have a constitutionally protected liberty interest in the care and custody of their children. *Santosky v. Kramer*, 455 U.S. 745, 753 (1982). A parent "may state a cause of action under [Section] 1983 when she alleges that the state terminated her parent-child relationship without due process of law." *Smoot v. City of Placentia*, 950 F. Supp. 282, 283

- 6 -

(C.D. Cal. 1997). The Ninth Circuit has generally characterized the right to familial association as a liberty right under the Due Process Clause of the Fourteenth Amendment. *Lee v. City of Los Angeles*, 250 F.3d 668, 685–86 (9th Cir. 2001); *Wallis v. Spencer*, 202 F.3d 1126, 1136 (9th Cir. 2000) ("Parents and children have a well-elaborated constitutional right to live together without governmental interference .... That right is an essential liberty interest protected by the Fourteenth Amendment's guarantee that parents and children will not be separated by the state without due process of law except in an emergency."). *See also Keates v. Koile*, 883 F.3d 1228, 1236 (9th Cir. 2018) (explaining constitutional standards for evaluating claims based upon removal of children).

The right to familial association has both a substantive and a procedural component. *Keates*, 883 F.3d at 1236. "While the right is a fundamental liberty interest, officials may interfere with the right if they "provide the parents with fundamentally fair procedures[.]" *Id.* (internal citations omitted); *see also Kirkpatrick v. Cnty. of Washoe*, 843 F.3d 784, 789 (9th Cir. 2016) (quoting *Wallis v. Spencer*, 202 F.3d 1126, 1136 (9th Cir. 1999)) (The Fourteenth Amendment guarantees "that parents and children will not be separated by the state without due process of law except in an emergency.")

To state a claim under the Due Process Clause, it is not enough to allege that a state actor interfered with the familial relationship. *Woodrum*, 866 F.2d at 1125. "Officials may not remove children from their parents without a court order unless they have 'information at the time of the seizure that establishes reasonable cause to believe that the child is in imminent danger of serious bodily injury.'" *Keates*, 883 F.3d at 1236 (quoting *Rogers v. County of San Joaquin*, 487 F.3d 1288, 1294 (9th Cir. 2007)); *see also Caldwell v. LeFaver*, 928 F.2d 331, 333 (9th Cir. 1991) (a state agency may remove children from their parents' custody in an emergency if the children are subject to immediate or apparent danger or harm).

///

///

///

1. **Defendant Case**

    a. **Removal Claims**

The FAC seems to involve two different types of conduct by Defendant Case—conduct relating to the removal of the minor children from Plaintiff and conduct involving post-removal dependency proceedings against Plaintiff.

A lawful removal order would likely prevent Plaintiff from stating a cognizable claim for denial of familial association in violation of Due Process. Under Arizona law, a superior court may allow DCS "to take temporary custody of a child on finding that probable cause exists to believe that temporary custody is clearly necessary to protect the child from suffering abuse or neglect and it is contrary to the child's welfare to remain in the home." Ariz. Rev. Stat. Ann. § 8-821(B). Likewise, to continue temporary custody, DCS "has the burden of presenting evidence as to whether there is probable cause to believe that continued temporary custody is clearly necessary to prevent abuse or neglect pending the hearing on the dependency petition." *Id.* § 8-824(F). The test for probable cause asks whether, under the circumstances, a reasonably prudent person would have believed the presented allegations. *Gonzales v. City of Phx.*, 52 P.3d 184, 187 (Ariz. 2002). Abuse means "the infliction or allowing of physical injury." Ariz. Rev. Stat. Ann. § 8-201(2). Physical injury may include "any skin bruising." *See Louis C. v. Dep't of Child Safety*, 353 P.3d 364, 368 (Ariz. Ct. App. 2015); *see also* Ariz. Rev. Stat. Ann. § 13–3623(F)(4). In these proceedings, the superior court applies the preponderance of the evidence standard. Ariz. Rev. Stat. Ann. § 8-844(C); *In re Cochise Cnty. Juv. Action No. 5666–J*, 650 P.2d 459, 460–61 (Ariz. 1982); *Louis C.*, 353 P.3d at 370.

Plaintiff appears to challenge, in conclusory terms, the premise justifying the 2019 removal and suggests that the underlying allegations were fabricated or that the legal process was somehow deficient. The FAC, however, lacks sufficient facts alleging "reckless, intentional and deliberate acts and omissions of defendants" constituting an "unwarranted interference" with the right of familial association. *Cf. Lee*, 250 F.3d at 685–86. As such, the Court will also dismiss the due process claim for failure state a claim upon

- 8 -

which relief may be granted. This claim is dismissed with leave to amend.

### b. Post-Removal Claims

Plaintiff's post-removal dependency proceeding claims are similarly vague. It is unclear what theory or theories Plaintiff is attempting to allege, or what specific actions any individual Defendant took. It appears that Plaintiff may be attempting to assert a judicial deception claim. To succeed on a judicial deception claim, a plaintiff must prove: "(1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty." *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017) (internal citation omitted). The due process clause of the Fourteenth Amendment prohibits the deliberate fabrication of evidence by a state official. *Id.* at 793. Deliberately falsifying evidence in a child abuse investigation or including false evidentiary statements in a supporting declaration violates this constitutional right. *Constanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101, 1115 (9th Cir. 2010). The second prong is a question of materiality, requiring the plaintiff to show "the juvenile court would have declined to issue the order had [the defendant] been truthful." *Greene v. Camreta*, 588 F.3d at 1011, 1035 (9th Cir. 2009), *vacated in part on other grounds*, 563 U.S. 692 (2011). "[O]fficial conduct that 'shocks the conscience' in depriving parents of [a relationship with their children] is cognizable as a violation of due process," *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010). Here, the FAC lacks specificity regarding any fabricated or omitted evidence submitted during the dependency proceedings and there are insufficient facts to infer that Defendant Case deceived the juvenile court. To the extent Plaintiff attempts to assert a judicial deception claim, this claim is dismissed with leave to amend.

### 2. Defendant Croxton

A supervisor may be held individually liable under Section 1983 for (1) his own culpable action or inaction in the training, (2) supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or (3) for conduct that showed a reckless or callous indifference to the rights of others. *Keates*, 883 F.3d at 1243. A

supervisor cannot be held liable on a theory of vicarious liability. *See Starr v. Baca*, 652 F.3d 1202, 1206–07 (9th Cir. 2011). Deliberate indifference is an objective standard, and it is satisfied only when a Section 1983 "plaintiff can establish that the facts available to ... policymakers put them on actual or constructive notice that the particular omission [or act] is substantially certain to result in the violation of the constitutional rights of their citizens." *Castro v. Cnty. of Los Angeles*, 797 F.3d 654, 676 (9th Cir. 2015).

When supervisors are not directly involved in the allegedly unconstitutional conduct, *e.g.,* the child's removal, a Plaintiff can still plead a claim by showing that the supervisors "knew of unconstitutional conditions and culpable actions of [their] subordinates but failed to act." *Keates*, 883 F.3d at 1243 (internal citations and quotations omitted). The FAC fails on this front as well. Lacking are allegations to establish Defendant Croxton's knowledge of the alleged constitutional violations, or his inaction, such that a deliberate indifference inference can be made. In sum, the FAC lacks details related to when Plaintiff made her grievances, the substance of those grievances, the substance of Defendant Croxton's response, and the implicated constitutional violation. This claim is dismissed with leave to amend.

### 3. Defendant Brungardt

The FAC seems to allege that Defendant Brungardy made a false report to DCS with the intent to harm Plaintiff. The allegations are conclusory and do not indicate that Defendant Brungardy knew or reasonably should have known that she reported false information or that her submission caused a constitutional injury. For this reason, the claim is deficient. Defendant Brungardy is dismissed without prejudice.

### E. The FAC Names Improper Entity Defendants

Under *Monell*, a municipality can be sued as a "person" under section 1983 for "constitutional deprivations visited pursuant to governmental custom." *Monell v. Department of Soc. Servs. of New York*, 436 U.S. 658, 698 (1978). To establish *Monell* liability, a Plaintiff must show that (1) they were deprived of a constitutional right; (2) the municipality had a policy; (3) the policy amounted to a deliberate indifference to their

constitutional right; and (4) the policy was the "moving force behind the constitutional violation." *See Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir.1996).

### 1. DCS

Arizona law applies in determining whether DCS has the capacity to be sued. *See* Fed. R. Civ. P. 17(b); *Machowicz v. Maricopa County*, No. CV-21-00316-PHX-JJT, 2021 WL 4319206, at *2 (D. Ariz. Sept. 23, 2021). In Arizona, "a governmental entity may be sued only if the legislature has so provided." *Braillard v. Maricopa County*, 224 Ariz. 481 (Ariz. Ct. App. 2010). "The statutory provisions by which the legislature created DCS do not so provide." *East v. Arizona*, No. CV-17-01685-PHX-GMS, 2017 WL 6820141, at *2 (D. Ariz. Aug. 23, 2017) (citing Ariz. Rev. Stat. Ann. §§ 8-451 to -892); *see also Neeley v. Arizona*, No. CV-19-05899-PHX-SPL, 2022 WL 44676, at *7 (D. Ariz. Jan. 5, 2022). As such, DCS lacks the capacity to be sued.

Even if DCS could be sued, courts have repeatedly rejected the argument that DCS is subject to Section 1983 liability under *Monell*, because DCS is plainly a state entity rather than a municipal entity. *See, e.g.*, *Neeley*, 2022 WL 44676, at *7–8; *Stanberry-Sproles v. Ariz. Dep't of Child Safety*, No. CV-22-00364-PHX-DWL, 2022 WL 1061913, at *2 (D. Ariz. Apr. 8, 2022). Plaintiff's claims against DCS will be **dismissed with prejudice**.

### 2. Ombudsman

Plaintiff does not allege that an Ombudsman staff participated in or directed any constitutional violation against her. Moreover, the Court has found no authority, and Plaintiff has referenced none, to show Ombudsman is a municipal entity for purposes of Section 1983 liability under *Monell*. Lastly, it appears Ombudsman is an arm of the State that is entitled to Eleventh Amendment immunity. *See generally, Chagolla v. Vullo*, 834 F. App'x 350, 352 (9th Cir. 2010). Plaintiff's claims against Ombudsman will be **dismissed with prejudice**.

### III. Leave to Amend

"[A] district court should grant leave to amend even if no request to amend the

pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (cleaned up). Plaintiff's second amended complaint must address the deficiencies identified above and should follow the form detailed in Rule 7.1 of the Local Rules of Civil Procedure. Within thirty (30) days from the date of entry of this Order, Plaintiff may submit an amended complaint. Plaintiff must clearly designate on the face of the document that it is the "Second Amended Complaint." The amended complaint must be retyped or rewritten in its entirety and may not incorporate any part of the original Complaint by reference.

## IV. Order

**IT IS ORDERED DISMISSING WITH PREJUDICE** Defendants: (1) Department of Child Safety; and (2) Ombudsman.

**IT IS FURTHER ORDERED DISMISSING WITHOUT PREJUDICE** the remaining claims in Plaintiff's First Amended Complaint (Doc. 10).

**IT IS FURTHER ORDERED GRANTING** Plaintiff leave to file a Second Amended Complaint within thirty (30) days from the date of entry of this Order. If Plaintiff does not file a Second Amended Complaint within thirty (30) days from the date of entry of this Order, the Clerk of the Court shall dismiss this action without further order of this Court.

Dated this 21st day of June, 2023.

_____
Honorable John C. Hinderaker
United States District Judge